# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONIB ZIRVI, M.D., Ph. D. | Civil Action No. 2:23-cv-01997-MCA-JSA |
| Plaintiff, | Filed Electronically |
| v. | |
| ILLUMINA, INC., THERMO FISHER SCIENTIFIC, AKIN GUMP STRAUSS HAUER & FELD LLP, LATHAM & WATKINS, RIP FINST, SEAN BOYLE, MATTHEW A. PEARSON, ANGELA VERRECCHIO, ROGER CHIN, and DOUGLAS LUMISH, | **Oral Argument Requested** |
| Defendants. | |

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION OF DEFENDANTS' MOTIONS TO DISMISS
## [ECF NO. 82-1] and [ECF NO. 84-1]

Contents

PRELIMINARY STATEMENT ...................................................................5

ALLEGATIONS FROM THE COMPLAINT .............................................7

ALLEGATIONS FROM THE DECLARATION OF DR. ZIRVI.........................12

   DR. ZIRVI IS NOT SUING FOR TRADE SECRET THEFT ............................13

ARGUMENT .........................................................................................27

   I.   THE COMPLAINT STATES A CLAIM ......................................................27

     A.   Legal Standard For A Motion To Dismiss ................................27

     B.   No Claim Preclusions Bar Zirvi's Claims ................................28

     C.  No Issue Preclusions Bars Dr. Zirvi's Claims. ...........................30

     D.   Dr. Zirvi Has A Protectable Interest Under 35 U.S.C. § 256 .................33

     E.   Zirvi Has Pleaded The Existence Of An Attorney-Client Relationship ..34

   II. FRAUD IS PLEAD WITH ENOUGH SPECIFICITY ....................................39

   III. THIS MATTER SHOULD NOT BE TRANSFERRED.................................42

   IV. CONCLUSION .................................................................................44

CERTIFICATE OF SERVICE .................................................................44

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................40

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................27

*Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021) ............................................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................40

*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) .............................32

*Blonder-Tongue Labs.*, 402 U.S. at 331, 333, 91 S.Ct. 1434 ..................................32

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...........................................36

*Burlington Northern Railroad Co. v. Hyundai Merck Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir.1995) ............................................................................................30

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) ..........29

*CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) ...29

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ..............33

*Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982) ..........................38

*Grunwald v. Bronkesh*, 131 N.J. 483, 494-95, 621 A.2d 459, 464 (1993) ..............39

*Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991) ......................38

*Hood*, 93 N.M. 433, 601 P.2d 66, 67 (1979 .............................................................38

*In re Burlington Coat Factory*, 114 F.3d 1410, 1418 (3d Cir. 1997) ......................40

*In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992) ..................................................30

*In re Healthcare Real Est. Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019) (quoting Mullarkey, 536 F.3d at 225) ..................................................................................28

*In re Loring*, 73 N.J. 282, 289-90, 374 A.2d 466 (1977) ........................................37

*In re Palmieri*, 76 N.J. 51, 58-59 (1978) ................................................................35

*In re Silverman*, 113 N.J. 193, 207 (1998) ..............................................................34

*Kaye v. Rosefielde*, 432 N.J. Super. 421, 477 (App. Div. 2013) .............................34

*Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C.App.1989) ........................................38

*Laird v. Blacker*, 235 Cal.App.3d 1795, 279 Cal.Rptr. 700, 701, aff'd, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 552, 828 P.2d 691, 693 (1992) .......................................38

*Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322 (1955) .................................................29

*Luick v. Rademacher*, 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983) ..............38

*Magic World, Inc. v. Icardi*, 483 So.2d 815, 817 (Fla.App.1986) ..........................38

*Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple*, 394 Mass. 265, 475 N.E.2d 390, 391 (1985) ......................................................................................................38

*Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) ............28

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ..............................................................................................................30

*Parklane Hosiery*, 439 U.S. at 328, 332, 99 S.Ct. 645 ...........................................32

*Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007) ..............................................31

*Peloro v. U.S.*, 488 F.3d 163, 175 (3d Cir. 2007)...................................................32

*Peters v. Simmons*, 87 Wash.2d 400, 552 P.2d 1053, 1056 (1976)........................38

*SCE Group, Inc. v. Garson*, No. 21-CV-19944 (D.N.J. July 26, 2022) .................35

*Seidman v. Clifton Sav. Bank*, 205 N.J. 150, 169 (2009).........................................34

*Shapiro*, 964 F.2d at 284 (citing *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).................................................................................................39

*Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 450 N.E.2d 684, 685 (1983).......38

*Trecartin v. Mahoney-Troast Constr. Co.*, 21 N.J. Super. 69, 90 A.2d 273 (App. Div. 1952) .................................................................................................................27

*United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984)........................29

*Vance v. Scerbo*, No. A-2019-17T4 (N.J. Super. Ct. App. Div. Feb. 26, 2019) .....35

*Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986)...................................................38

*Watson v. Dorsey*, 265 Md. 509, 290 A.2d 530, 533 (1972)..................................38

*Zahl v. Eastland*, 465 N.J. Super. 79 (App. Div. 2020)..........................................36

## Statutes

28 U.S.C. § 1404(a) ..................................................................................................42

35 U.S.C. § 256..........................................................................................................33

*Canon Fin. Servs., Inc. v. JL Barrett Corp.*, No. 10-cv-4117, 2010 WL 4746242, *3 (D.N.J. Nov. 16, 2010)........................................................................................42

*CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004).........................................................................................................43

## Rules

Fed.R.Civ.P. 15(a) .....................................................................................................32

Plaintiff, Dr. Monib Zirvi, respectfully submits this memorandum of law in response to Defendants Thermo Fisher Scientific ("Thermo Fisher"), Akin Gump Strauss Hauer & Feld LLP ("Akin"), Latham & Watkins LLP ("Latham"), Rip Finst, Sean Boyle, Matthew A. Pearson, Angela Verrecchio, Roger Chin, and Douglas Lumish (collectively, the "Moving Defendants") memorandum of law in support of their motion to dismiss and Defendant Douglas Lumish separate memorandum of law in support of their motion to dismiss.

## PRELIMINARY STATEMENT

This Complaint is about the incorporation of ZipCode technology in numerous Illumina patents without naming Dr. Zirvi as an inventor and the Defendant Attorneys who did nothing to protect Dr. Zirvi related to the same while claiming they would represent him.

This Complaint is not a rehashing of claims made by Plaintiff Monib Zirvi in the prior lawsuit brought in New York in 2018 (the "SDNY Litigation") where his claims were dismissed with prejudice. *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 467 (S.D.N.Y. 2020) ("*Zirvi I*"), *aff'd*, 838 F. App'x 582 (2d Cir. 2020). The Order of Dismissal in the SDNY Litigation was based on the Court's examination of allegations that:

> …under both federal and New York State law, arise out of two alleged instances of misappropriation of trade secrets, one occurring in 1994 when certain trade secrets were

allegedly stolen from a confidential grant proposal, and one occurring in 1999 when alleged trade secrets were allegedly misappropriated during confidential communications. The plaintiffs allege that these two acts of misappropriation resulted in the theft of both positive and negative trade secrets." *Id. at* 454-455.

The claims made in the current case are not for the theft of trade secrets. Rather the claims under federal law stem from Illumina's failure to name Plaintiff as an inventor on multiple Illumina patents, the legal malpractice that occurred in the Cornell v. Illumina Litigation that allowed Illumina to do the same, and the conspiracy between the Defendants to let Illumina get away with the scheme. The legal malpractice claims would not ripen until the conclusion of the SDNY Litigation. Nothing in the Order of Dismissal in the SDNY Litigation addressed these claims.

The Order of Dismissal in the SDNY Litigation found that the statute of limitations, as applied to the trade secret claims raised in that case, had passed. The Order of Dismissal in the SDNY Litigation held that the statute of limitations of those claims "…began to run no later than the dates of the patent interference proceedings before the USPTO and the litigation in the federal district court in Delaware. In 2006, two plaintiffs in this action, **Zirvi** and Kempe, were **named as junior parties** in the interference before the USPTO. Gorman Decl., Ex. 25. In 2010, Cornell University, the assignee **of many of the patents relevant in this case**, sued Illumina, Inc. regarding many of the same patents, which, at the very

least, **put the plaintiffs** in this case **on** inquiry, if not actual, **notice**." *Id.* at 460.[1]

Contrary to the Defendants' assertions, this holding is a basis, and not a bar, for the present case. In the current case it was the purposeful lack of pursuing claims in the Cornell v. Illumina Litigation and then advising Dr. Zirvi at the twelfth hour to seek a separate trade secret claim in the SDNY Litigation that lead to the malpractice claims in the instant case. As alleged in this Complaint, it was an undisclosed conflict of interest that led to the Defendant Attorneys to commit the malpractice. The malpractice damage only ripened upon the SDNY Litigation finding that Dr. Zirvi could not be compensated through a trade secret claim.

The Plaintiff asserts that the following allegations in the Complaint and in the accompanying Declaration of Plaintiff, Dr. Zirvi, (See Exhibit 4 attached hereto) should be taken as true for the purpose of ruling on the Motion to Dismiss.

**ALLEGATIONS FROM THE COMPLAINT**

15. Illumina's illicit taking became the subject matter of multiple litigations between Cornell University, Cornell Research Foundation, Inc., Life Technologies Corporation, and Applied Biosystems, LLC1 versus Illumina.

16. Throughout the litigation the Plaintiff was in communication with, and advised extensively by Attorneys for Cornell University, Cornell Research Foundation, Inc., PE Applied Biosystems, LLC,

---

[1] Notably, the Court could not dismiss based on standing because "…these issues on a motion to dismiss because there are factual disputes about the circumstances under which the intellectual property was developed." *Id.* at fn5.

LifeTechnologies Corporation, and Thermo Fisher Scientific Inc., who represented to the Plaintiff that they were his counsel as well.

17. At various points throughout the Cornell litigation, the Attorneys representing the Plaintiff included, Rip Finst and Sean Boyle of THERMO FISHER SCIENTIFIC INC., Matthew A. Pearson and Angela Verrecchio, of AKIN GUMP STRAUSS HAUER & FELD LLP, Roger Chin and Douglas Lumish of LATHAM & WATKINS….

18. Plaintiff's Attorneys advised him that his interests were aligned with Cornell University, Cornell Research Foundation, Inc., PE Applied Biosystems, LLC, Life Technologies Corporation, and Thermo Fisher Scientific Inc., and that these attorneys represented his interests.

19. The Attorneys advised Plaintiff to not prepare for his deposition, to not review any documents, including his own patent filings, and not research facts related to Illumina, its founders, employees, and patent filings.

20. Instead, the Attorneys instructed and advised Plaintiff to answer questions with "I don't know", and "I don't remember", all explained to him as the best way to benefit Cornell and his rights against Illumina's illicit taking.

21. Attorneys for the Plaintiff withheld from Plaintiff that ThermoFisher was secretly collaborating with Illumina to develop "Ampliseq for Illumina" during the entire time they were representing Plaintiff – a knowingly deliberate conflict of interest. The secret collaboration, which upon information and belief started at least three years prior, was publicly admitted to having occurred at least a year prior to January 30th, 2018, while the Cornell v. Illumina (1:10-cv-00433-LPS) case was still active.…

23. Attorneys for the Plaintiff repeatedly requested via phone calls, video teleconferences, and emails for Plaintiff

to submit his expert analysis and findings that would strengthen the Cornell v Illumina (1:10-cv-00433-LPS) case, and Plaintiff spent hundreds of hours preparing such confidential analysis over a two-year period.

25. Between January 2017 and April 2017, Plaintiff sent Attorneys at ThermoFisher, Latham & Watkins and Akin Gump numerous emails containing bullet-proof evidence of fraud by Illumina which would have proven the claims by Cornell, yet such evidence was kept from the court in the Cornell v Illumina case (1:10-cv-00433-LPS). Plaintiff requested to file a declaration to introduce this evidence to the court, yet inexplicably, Attorneys denied this request. (See Exhibit 12 for Draft of Declaration written by Plaintiff and emailed about to Defendants including Rip Finst, Matthew Pearson, Roger Chin and Douglas Lumish shortly prior to the signing of the settlement agreement in Cornell v Illumina. Plaintiff specifically requested for their help to edit and submit this to the US District Court in Delaware as a Third Party with an interest.)

26. Unbeknownst to Plaintiff or Cornell at the time, Cornell v Illumina (1:10-cv-00433-LPS) was fraudulently settled by Illumina and ThermoFisher, simultaneously with several other lawsuits involving Illumina and ThermoFisher, in April 2017. Tellingly, Attorneys Roger Chin and Doug Lumish were working on the other cases involving Illumina and ThermoFisher but failed to disclose their obvious conflict of interest to either Plaintiff or Cornell. The settlements, while benefiting Illumina and ThermoFisher, completely undermined the rights of the Plaintiff.

27. Plaintiff discovered through a review of public SEC filings that Illumina had filed a First Amendment Agreement to raise funds for many years. In this document, the definition of "Tag Sequences" was redacted. When asked, Matthew Pearson said he knew about the First Amendment Agreement, and stated it had nothing to do with the inventors, including Plaintiff, as

well as their rights as inventors under the Cornell v. Illumina suit. Matthew Pearson refused to share any details of the First Amendment Agreement, requiring Plaintiff to obtain a copy of the unredacted First Amendment Agreement through a FOIA request to the SEC, which was received by Plaintiff on May 17, 2017 (Exhibit 3).

28. In the redacted document, everything passed the words "'Tag Sequence' means" was redacted. In the unredacted document, it continues as follows: "Tag Sequence" means a set of oligonucleotide probes, developed pursuant to the Original Agreement or this First Amendment, which act independently of any target-sequence-specific analytical chemical reactions to allow the physical addressing of the products of a chemical reaction to locations on a solid support, such as the "addressable array-specific portion" of the oligonucleotide probes and their complements described in International Patent Application No. W097/31256 and that are designed for use in the Collaboration Product. The Parties will agree on the selection of Tag Sequences to be used in the Collaboration Product, subject to the approval of the Joint Steering Committee.

29. International Patent Application No. W097/31256 is an invention that was submitted before Illumina even existed, with Dr. Zirvi as a coinventor. In the First Amendment Agreement, it states: "The Parties will share responsibility for defining and developing Tag Sequences for the Collaboration Product which will attempt to avoid third party intellectual property rights or other encumbrances." In other words, this was collusion by Illumina and ThermoFisher to apparently defraud third parties, such as Cornell and the Plaintiff. Dr. Zirvi informed Cornell of the findings in the unredacted First Amendment Agreement.

38. The Plaintiff has not been recognized as an inventor on any of Illumina's patents using the Zip Code Operating

System; has not received royalties from Illumina's use of Plaintiff's Zip Code Operating System in their software and products….

39. Illumina and its founders and employees have incorporated the ZipCode Operating System and utilized Plaintiffs' ZipCode sequences and designs to manufacture and commercialize numerous products. Illumina knowingly applied for these patents without including Plaintiff as an inventor and the patent claims would not have been issued had it not been for Illumina's commercial success using ZipCode sequences and the ZipCode Operating System to determine the location of DNA sequences in the Sentrix arrays, GoldenGate assays and Infinium arrays as demonstrated by the software used to analyze .dmap files associated with these products. This software specifically calls the DNA sequences, used by Illumina in its products, ZipCode (and not by any other name or pseudonym).

46. But for the intentional acts and negligence of the attorneys representing Plaintiff in the Cornell case the Plaintiff would have been able to enforce his intellectual property rights against Illumina.

47. But for the conspiring of all Defendants, Plaintiff Zirvi would have received the recognition and royalties on a series of patents (See: Czarnik v. Illumina, Case 1:05-cv-00400- JJF).[2]

---

[2] In Czarnik v. Illumina, Case 1:05-cv-00400- JJF, Czarnik successfully plead:

104. As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

48. Plaintiff asserts that the failure to name Plaintiff as an inventor on the patents filed by the assignee has caused significant reputational harm. Plaintiff's contributions to the development of the technology are significant and cannot be denied. The claimant has been acknowledged as a key contributor to the development of the technology. (See Exhibit 9 Affidavit of Dr. Francis Barany) However, the failure to name the claimant as an inventor on the patents has undermined the claimant's reputation and standing in the scientific community.

49. The Plaintiff's claim is based on 35 U.S.C. § 256, which provides for correction of inventorship in patents. Plaintiff believes that the assignee erred in failing to name Plaintiff as an inventor on the patents and that this error should be corrected.

**ALLEGATIONS FROM THE DECLARATION OF DR. ZIRVI**

Dr. Zirvi confirms the extent of the contact Plaintiff had with the

Defendant Attorneys. Plaintiff and Matthew Pearson were on over 300 emails,

---

106. As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual salary of approximately $1 million. As a direct and foreseeable consequence of these actions by Defendant Illumina, Dr. Czarnik has been damaged in an amount to be proven at trial.
The same is true regarding Dr. Zirvi has not received the reputational benefits associated with being named as an inventor and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

containing 1600 pages from February 2015 - April 17, 2017.[3] Plaintiff and Roger

Chin were on 80 emails, containing 260 pages from January 2017 – April 2017.[4]

Plaintiff and Douglas Lumish were on 80 emails, containing 260 pages from

January 2017 – April 2017.[5] In addition, during the Cornell v. Illumina

Litigation there were in person meetings, Webex meetings, PowerPoint

presentations, deposition preparations, a defending of Plaintiffs deposition, and

interaction with counsel at the Markman hearing in Delaware. All under the

guise that Dr. Zirvi was being represented by the Defendant Attorneys.

### *DR. ZIRVI IS NOT SUING FOR TRADE SECRET THEFT*

The claims made in this case are not for theft of a trade secret. The

Defendant Attorneys correctly point out the Second Circuit, affirmed the district

court's finding that Dr. Zirvi's claims regarding trade secret theft were time-

barred by no later than May 2014. The Defendant Attorneys knew, or should

have known, that claims could have been made in the Cornell v. Illumina

Litigation that would relate back to its original filing in 2010. The Defendant

Attorneys should have known that a conflict of interest was present from the

very beginning of the Cornell v. Illumina Litigation and remained throughout.

---

[3] Exhibit 1 hereto contains an important sample of the many emails with Dr. Zirvi and Matthew Pearson. All of the emails are available.
[4] Exhibit 2 contains an important sample of the emails with Roger Chin and Dr. Zirvi.

[5] Exhibit 3 contains key the emails with Douglas Lumish and Dr. Zirvi.

Rip Finst was counsel from the start of the Cornell v. Illumina Litigation and he, along with every other attorney who joined in later failed to advise Dr. Zirvi of his rights or the conflict. Consequently, The ruling in the Cornell v. Illumina Litigation and the SDNY Litigation are not fatal to Dr. Zirvi's claims but are the basis of his claims against the Defendant Attorneys.

*First*, the doctrine of claim preclusion does not bar Dr. Zirvi from advancing because the claims are not the same in this case nor are the parties. Defendant Attorneys cannot hide behind a claim of privity with Thermo Fisher. Zirvi claims his own privity with the Defendant Attorneys. Defendant Attorneys' privity with both is at the root of the conflict-of-interest allegations against Defendant Attorneys. The SDNY Litigation was a case regarding theft of trade secrets based on the advice of Roger Chin. Had the SDNY Litigation resulted in Dr. Zirvi recovering his damages under a theory of trade secret violation then a claim for malpractice would not be viable because the damages would have been paid. Consequently, the result of the SDNY Litigation was not preclusive but necessary for the claims against the Defendant Attorneys.

*Second*, there is no "fatal flaw" in Dr. Zirvi's claims because the SDNY Litigation established that the clock had already run out on his claims well *before* his alleged interactions with Thermo Fisher and its lawyers. This interaction with

Thermo Fisher and *his* lawyers was during the Cornell v. Illumina Litigation that started in 2010.  The Defendants Attorneys knew Dr. Zirvi had claims that could relate back to the filing of the Complaint. Moreover, the Defendant Attorneys knew their conflict of interest caused by the new Thermo Fisher and Illumina alliance, known as "Ampliseq for Illumina" caused them to ignore the legal issues raised by Dr. Zirvi in early 2017 and would lead them to exclude Dr. Zirvi's in the settlement of the Cornell v. Illumina Litigation.[6] The Defendant Attorneys actively chose not to inform Dr. Zirvi of either and instead feigned to protect his interest throughout out. The damage for such acts would only be realized upon the conclusion of the SDNY Litigation.

*Third*, Dr. Zirvi's claims do not hinge on the notion that he had a valid and enforceable trade secret to begin with. Because of the malpractice Dr. Zirvi has been precluded from seeking a claim based on a theory of trade secret theft for which the clock has run out. Moreover, the failure to disclose a conflict by the Defendant Attorneys undermined Dr. Zirvi's claims and his position regarding

_____

[6] See Exhibit 5 attached hereto, Docket sheet from Cornell v. Illumina Litigation. In February 2017, Life Tech informed Cornell that it was pursuing settlement discussions with Illumina. Life Tech and Cornell subsequently exchanged several communications, including e-mails, related to those discussions. Upon information and belief, these emails include responses to Dr. Zirvi's and Dr. Barany's numerous emails from February 2017 to April 2017 in which were against the interest of Dr. Zirvi as a co-inventor and party whose interest were supposed to be protected.

settlements reached in the Cornell v. Illumina Litigation.  Settlements he has never seen.[7]

However, Dr. Zirvi's right to bring a malpractice claim based on the Defendant Attorneys letting the clock expire is not out of time. The right to sue for malpractice for the Defendant Attorneys engaging in conflicting representation that resulted in damages to Dr. Zirvi has not run out. Neither has his right to be named as an inventor on the Illumina patents as argued in Dr. Zirvi's response to Illumina's Motion to Dismiss. Dr. Zirvi has alleged in this case that he was the inventor of ZipCode technology that has been incorporated in many of Illumina's patents and as such he should be named as a co-inventor on these patents. Dr. Zirvi, upon his discovery of his ZipCode technology in Illumina's products and patents, raised these facts with Defendant Attorneys in late 2016 and throughout early 2017. However, he was advised that his was a claim for trade secret violation and one that could not be brought in Cornell v. Illumina Litigation but separately. That advice was wrong.

Defendant Attorneys argue that in the SDNY Litigation, the court held that Zirvi had no protectable trade secret. However, it was Roger Chin who advised of the claim in the first place, long after the Defendant Attorneys should

---

[7] New Jersey law requires a Plaintiff file an affidavit of merit regarding claims of malpractice which Plaintiff did in this case and incorporates by reference herein into this response.

have advised of an obvious conflict of interest. The claims in this case regarding ZipCode technology are not based on trade secret law. Rather, they are based on Dr. Zirvi's ZipCode technology having been incorporated into Illumina's patents with the knowledge of Defendant Attorneys who did nothing to protect Dr. Zirvi's interest in the same and tried to bury any legal claim he made have had regarding the same.

*Fourth*, Dr. Zirvi has pled, and offers in his responsive Declaration evidence of a long line of communications that establish an attorney client relationship as detailed above. *Fifth*, the complaint pleads acts of malpractice with enough specificity, and an affidavit of merit against all the Defendant Attorneys and their unblemished reputations have no bearing on this Complaint. *Sixth*, Zirvi's claims for alleged "correction" of inventorship was laid at the feet of the Defendant Attorneys in January and February of 2017, however as alleged in the Complaint Thermo Fisher and its counsel (allegedly representing the best interest of Dr. Zirvi) were more interested in conducting business with Illumina to form a joint product line that would reap new profit for the two companies, than continuing litigation to "correct" the patents at issue.

In January 2018, CEO Francis DeSouza in official SEC filings was asked about the backstory about Ampliseq for Illumina. When asked in an investor information call about the Ampliseq for Illumina collaboration with

ThermoFisher, Francis DeSouza stated that "...And so we started the conversation clearly well over a year ago." This put the collaboration start at most at the end of 2016 to January 2017, around the time Rip Finst insisted on new counsel Roger Chin and Douglas Lumish in Cornell v Illumina. During the entire SDNY case, there was no reason to believe that Francis DeSouza was lying in an official SEC filing as that is illegal due to the duty of candor to investors and the SEC. After the SDNY case had been decided, new information came to light during the FTC investigation of the Illumina-GRAIL merger. This led to the discovery that Francis DeSouza had lied in official court documents about bitcoins in a divorce settlement. This "storm warning" of fraud, put plaintiff Zirvi on inquiry notice as to the true start date of the Ampliseq for Illumina collaboration. Diligent searches of public records showed that a LinkedIn profile for an employee of Illumina (see exhibit) stated that he was working on Ampliseq for Illumina in collaboration with ThermoFisher since at least January of 2016 (Charles Lin, Senior Staff Scientist, Jan 2016 - Partnering with Thermo Fisher on AmpliSeq for Illumina (launched in 2018)). See attached Exhibit 6. Upon additional information and belief, the actual collaboration was in the works for OVER 3 years prior to the launch date (or around January 2015), which was well before Plaintiff Zirvi's deposition in July 2015 and PRIOR to the Markman Hearing in that case. (See ECF 1, ¶ 21). This suggests the bulk of

the Cornell v. Illumina case, was conducted under conditions when Illumina and ThermoFisher were already secretly working together in a clear fraud on the Courts. Further, it appears "the fix was in" even prior to Plaintiff Zirvi having been contacted by Defendant Matthew Pearson of Akin Gump, working on behalf of Thermo Fisher. Plaintiff Zirvi never even had a chance of obtaining his rightful royalties. This new fact, which Plaintiff was unaware of at the time of the SDNY case is both highly relevant and merits immediate discovery and further inquiry by this Court.

When did Akin Gump find out about the secret collaboration between Illumina and ThermoFisher? Was it when they signed onto the case in 2014? Was it before they contacted Dr. Zirvi? Was it in January of 2017, when they were being replaced by Latham Watkins? or was it in 2018, when the collaboration was announced publicly? When did Latham Watkins find out? Was it in January of 2017 when they were brought onto the case? Doug Lumish and Richard Chin were already working with and representing ThermoFisher in the other case (cite case) that started in 2011 and in which Rip Finst appeared in January 2012. On July 9th, 2014, Roger Chin and Douglas Lumish appeared simultaneously in that litigation as outside counsel shortly after ThermoFisher purchased Life Technologies. However, they knowingly with-held this conflict-

of-interest information from both Cornell and the Plaintiffs. Thus, as with the case of the FTC and Francis DeSouza above, the lack of candor at Latham Watkins suggests upon information and belief that Doug Lumish and/or Richard Chin were aware of the secret collaboration between Illumina and ThermoFisher at the time they were brought into the case in January of 2017, and they colluded with ThermoFisher and Illumina to convince Cornell their position was lost, and they need to shut down the case as soon as possible.

Dr. Zirvi has done everything that must be done to pled causes of action against the Defendant Attorneys who provided legal advice, through an attorney client relationship to their client in New Jersey. The case should not be dismissed or transferred to another jurisdiction.

Dr. Zirvi alleges his ZipCodes technology has been incorporated into numerous Illumina patents. He alleges that he made Defendant Attorneys aware of this fact during the Cornell v. Illumina Litigation and because of a conflict of interest they did nothing to protect his rights. Instead, he was ultimately advised that his claims were trade secret claims that could not be brought in the Cornell v. Illumina Litigation. Dr. Zirvi following that advice did seek a claim based on trade secret theft only to have the Cornel Litigation act as a bar to that litigation. Now Dr. Zirvi seeks to be named as an inventor on the Illumina patents that have incorporated his

ZipCode technology. An act that should have been pursued during the Cornell v. Illumina Litigation or the settlement thereof.

The Defendant Attorneys requested the Court look to the record of the Cornell v. Illumina Litigation[8] in determining their Motion to Dismiss we request the same, as well as the other public records cited herein and, in the Complaint.[9]

The Defendant Attorneys spend much of their time discussing prior patents leading up to the Cornell v. Illumina Litigation and what Dr. Zirvi should have known. Dr. Zirvi's position regarding the same is that he should have known this information once the Defendant Attorneys became aware of it in the during the Cornell v. Illumina Litigation. However, he never received this information through lawyers that had promised to protect his interest.

Defendant Attorneys write, "in May 2010, Cornell and its licensee, Life Technologies (which Thermo Fisher purchased in 2014), sued Illumina for patent infringement in the U.S. District Court for the District of Delaware (the "Delaware

_____

[8] Cornell Univ. v. Illumina, Inc., 1:10-cv-00433 (D. Del.)) The Court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d. Cir. 2004). Moreover, the Court may take judicial notice of facts "that [are] not subject to reasonable dispute," including matters of public record. Roche v. Aetna, Inc., No. 22-cv-00607, 2023 WL 3173394, *3 (D.N.J. May 1, 2023) (quoting Fed. R. Evid. 201(b)).
[9] including Czarnik v. Illumina, Case 1:05-cv-00400- JJF citied in fn 6 and Illumina vs Life Technologies.

Litigation"). (Compl. 15); *see Zirvi I*, 433 F. Supp. 3d at 457." This is a true statement.

Defendant Attorneys then write, "[t]he patents at issue in Delaware Litigation are the same as the ones at issue here. (*See* Compl. ¶¶ 40, 43, Ex. 5; *see also* Stein Dec., Ex. 1 ¶ 41.) This is a false statement.

Defendant Attorneys write "Having assigned his patent rights to Cornell, Zirvi had no claim in and was not a party to the Delaware Litigation." This is a false statement. If the same were true, then why would Rodger Chin tell Dr. Zirvi that he had a claim to pursue that was based on trade secret law? If that were true, then why was Dr. Zirvi told he could have his own attorney but that attorney would not have access to any documents under the protective order.

Defendant Attorneys write "The Delaware Litigation was settled in April 2017. (Compl. ¶ 26.) In June 2017, Cornell moved to vacate the settlement under Federal Rule of Civil Procedure 60(b)(6). (*Id.* ¶¶ 27–30, Ex. 4.) Zirvi alleges that Cornell's motion was based on his discovery of alleged "fraud and collusion" by Illumina and Thermo Fisher. (*Id.* ¶ 30.) This is true.

The motion was denied. *See Cornell Univ. v. Illumina, Inc.*, No. 1:10-cv-00433, 2018 WL 1605142, at *1, 3-5 (D. Del. Mar. 29, 2018). This is a serious mischaracterization of the ruling. The ruling from March 29, 2018, was based on two keys facts that do not present in the current case: 1.  Cornell and Life Tech

were parties to a New Exclusive License Agreement ("NELA"). (D.I. 606-1

("NELA")), which contained an arbitration clause (Dr. Zirvi is not a party to a

NELA agreement); and 2. Cornell was attempting to set aside a final judgement and

the Court ruled they needed to negotiate with Thermo Fisher.

The Report simply found, as the Court does now, that those allegations fall

short of presenting "exceptional or extraordinary circumstances" justifying

reopening the final judgment. (See D.I. 679 at 15) (noting that while "Cornell's

briefs include extensive allegations regarding Life Tech's purported fraudulent

misrepresentations and omissions," Cornell failed to show "extraordinary

circumstances" justifying relief).

The   Cornell v. Illumina Court never made a finding that there was no fraud.

Even if it had that finding would not be binding on Dr. Zirvi.

In 2018, Dr. Zirvi brought a suit in the U.S. District Court for the Southern

District of New York against Illumina, two divisions of Thermo Fisher (Affymetrix

and Applied Biosystems). The suit did not include the claims brought in the current

case and it did not include the Defendant Attorneys seeking this dismissal. It did as

all historical accounts of origins of claims related Dr. Zirvi's ZipCode technology

contain overlapping facts, including, failure to depose a key witness, "colluded to

fraudulently induce a settlement" in the Delaware Litigation, and "fraudulently

conceal[ed] the fact that Thermo Fisher and Illumina were also settling a simultaneous lawsuit in [the Southern District of] California." (*Id.* ¶¶ 7-8, 488-490.)

Judge Koeltl held that Zirvi's federal and state claims were time barred. However, the federal claim was not the one being pursued in the current case. Rather the federal claim was based on the advice that was provided by Roger Chin that the theft of the ZipCodes was a trade secret case. Judge Koeltl went on to explain that, at best for Zirvi, the 2006 Patent Litigation and the 2010 Delaware Litigation were triggers for accrual. *Id.* at 460. Judge Koeltl also rejected Zirvi's equitable-tolling argument, noting, among other things, **Zirvi's "lack of due diligence" in asserting his claims**. *Id.* at 461-63. Accordingly, all Zirvi's claims expired no later than May 2014. Yet these same Defendant Attorneys refused to bring Dr. Zirvi's claim when asked in the *Cornell v. Illumina* litigation that started in 2010 and which an argument should have been made to relate his claims back to the filing date.

Defendant Attorneys write in the Motion to Dismiss, "[o]ver two years after the Second Circuit affirmed the dismissal of the SDNY Litigation, Zirvi filed this action based on the same factual nexus as his dismissed claims." This is partially true. In this action Dr. Zirvi makes clear that he was told, and all the communications between the parties amounts to, his interest were going to be protected by the Defendant Attorneys in the *Cornell v. Illumina* Litigation. His interests were not

protected and his claim against the Defendant Attorneys is well within the New Jersey statute of limitations regarding the same.

Moreover, Defendant Attorneys failed to assist him and instead pressured Cornell to forbid Plaintiff from submitting the declaration (which would have disrupted their scheme). Evidence that helps corroborate this is the fact that Roger Chin, Douglas Lumish and Rip Finst had submitted two documents in Illumina vs Life Technologies Southern District of California Case 3:11-cv-03022-JAH-DHB (See ECF No. 73 and 83, ¶¶170-172) filed on November 21, 2016 and December 30, 2016 respectively, which informed the court there of fraud by Illumina in its patent applications.  Yet this very same information, which is relevant to the 52 patents in this suit, should have been presented in Cornell v Illumina and deliberately was not.

Thermo Fisher's counsel, which included Douglas Lumish, Roger Chin and Rip Finst wrote of Illumina in that case in Paragraphs 170-172:

170. Stuelpnagel's [of Illumina] pattern of submitting false and misleading information in connection with inventorship is further demonstrated by his misrepresentations in an oath of inventorship for a contemporaneous Illumina patent application that named him as an inventor. When asked in prior litigation if he was telling the truth in his oath of inventorship, Stuelpnagel testified: "I don't know."

Instead, he characterized his signature on the oath of inventorship as a "ministerial act" that he signed merely to "validate the patent and get it issued for Illumina."

171. Stuelpnagel had a strong incentive to conceal Kirk's contribution to the '431 patent. Because Kirk declined to join Illumina and had not assigned to Illumina the Kirk invention disclosed to Stuelpnagel in the March 9, 1998 email, had Kirk been named as an inventor, Illumina would have had to acknowledge Kirk's inventorship and ownership interests in the '431 patent and priority applications, and Illumina would not have been able to claim exclusive ownership 16 and control of the '431 patent and priority applications.

172. The single most reasonable inference is that Stuelpnagel acted with specific intent to deceive the PTO by concealing the March 9, 1998 email, concealing Kirk's contribution to the claims of the '431 patent, omitting Kirk as a co-inventor of the '431 patent, and submitting a false oath of inventorship in connection with the '431 patent notwithstanding knowledge of Kirk's contribution to the claimed subject matter.

The plan by the defendants was to shut down this litigation (which was scheduled to go to trial in July 2017) so that the Defendants could share profits in the "Ampliseq for Illumina" collaboration product line. (See ECF 1, ¶ ¶ 21, 24).

Roger Chin, Douglas Lumish and Latham & Watkins failed to disclose the numerous conflicts of interests that ThermoFisher and Latham & Watkins had with

Cornell and Plaintiff Zirvi, even though their retainer agreement had a lengthy explanation regarding potential conflicts none of that was shared with Dr. Zirvi. Cornell's Rule 60(b)(6) contains in the redacted sections and exhibits the entire email discussion that all Defendants used to accomplish their goal. Plaintiff Zirvi was a third party with an interest in that litigation and the Defendant Attorneys clearly were representing parties with adverse interests to Dr. Zirvi while feigning an alignment of interests.

## ARGUMENT

### I.    THE COMPLAINT STATES A CLAIM

### A.    Legal Standard For A Motion To Dismiss

In the case, the Defendant Attorneys are being sued under New Jersey state law for legal malpractice and civil conspiracy. Yet the Defendant Attorneys ask this Court to apply *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). While the Plaintiff believes it meets either standard the correct state standard was articulated in *Trecartin v. Mahoney-Troast Constr. Co.*, 21 N.J. Super. 69, 90 A.2d 273 (App. Div. 1952), where the court recognized that a motion to dismiss should not be granted unless, accepting all well-pleaded allegations as true and giving the plaintiff the benefit of all favorable inferences, there is no possible set of facts on which relief can be granted. To withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." In either regard Dr. Zirvi's Complaint meets

the *Trecartin* or *Ashcroft* standard that plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

**B.    No Claim Preclusions Bar Zirvi's Claims**

Defendant is correct regarding the claim preclusion test. However, "Recognizing the severity of claim preclusion's consequences, we apply the doctrine with care and only in appropriate circumstances. See, e.g., *Papera v. Pa. Quarried Bluestone Co*., 948 F.3d 607, 611 (3d Cir. 2020) (construing ambiguities in prior dismissal against claim preclusion). When a defendant seeks to invoke claim preclusion based on a federal tribunal's judgment, we require '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.' *In re Healthcare Real Est. Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019) (quoting Mullarkey, 536 F.3d at 225)." *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021)

As noted above, the Defendant Attorney claim privity exists between themselves and the SDNY Litigation Defendants. However, as Chief Justice Warren explained, "The court below held that their relationship to the other defendants was "close enough to bring them all within the scope of the doctrine of res judicata." With this conclusion, we cannot agree…. there was no obligation to join them in the 1942 case since as joint tortfeasors they were not indispensable parties; and that their

liability was not "altogether dependent upon the culpability" of the defendants in the 1942 suit." *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322 (1955). *Lawlor* court noted that the orthodox notion of privies was found in "Restatement, Judgments, § 83, Comment a: "those who control an action although not parties to it . . .; those whose interests are represented by a party to the action . . .; successors in interest . . . ."" *Id.* at n.19. The Attorney Defendants are not the types of privies meant to be included in the application of claim preclusion.

Nor do Dr. Zirvi's claims here arise from the same nexus of operative fact as his claims in the SDNY Litigation. The Defendant would like us to believe that "In deciding whether two suits are based on the same 'cause of action,'" the Third Circuit "take[s] a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (quoting *United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984)).

The Third Circuit was recently unpersuaded by this misunderstanding of claim preclusion's that believed a plaintiff must bring every claim that "could have been raised" requirement, articulated in *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999), that would oblige a plaintiff wishing to avoid claim preclusion not only to assert every available claim, but also to choose the forum with

the broadest jurisdiction in which to do so. *Beasley* at 234-35 (2021). This Court

should also be unpersuaded by the Defendant Attorney's argument.

**C.    No Issue Preclusions Bars Dr. Zirvi's Claims.**

Dr. Zirvi has alleged in the present lawsuit that Defendant Attorneys acts of

malpractice included: Defendant Attorneys failure to assert a claim on in the Cornell

v. Illumina Litigation; he should have been a party to the settlement agreement in

the Cornell v. Illumina Litigation; and failure to ensure his interests were protected

in that settlement was malpractice. Finally, he claims that the Defendant Attorneys

had an obligation to raise potential and actual conflicts of interest with him and they

did not even bother to tell Dr. Zirvi that he was not represented by them until the

twelfth hour in the Cornell v. Illumina Litigation. There is no decided issue from the

SDNY Litigation that precludes the legal malpractice in this case or the civil

conspiracy claim.

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the **issue sought to be precluded [is] the same as that involved in the prior action**; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Burlington Northern Railroad Co. v. Hyundai Merck Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir.1992)); see also *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)."

*Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007).

The time bar regarding the ability to bring a trade secret claim, as advised by Roger Chin, is precluded. However, that has no bearing on any claim pending before this Court.

Dr. Zirvi's claims do not require a protectable trade secret at the time of the "acts of malpractice, collusion, and continued coverup" alleged in the complaint. (Letter from Joseph D. Garrity, Esq. to Hon. Jessica S. Allen dated Sept. 5, 2023 [ECF No. 79], at 2.) Those facts may exist and are rightfully included in the background of the present lawsuit, but this case is about different issues and different claims. The issues and claims in this case are about the failure of Defendant Attorneys to keep Dr. Zirvi's interests above their own and not continue to represent him when a potential or actual conflict of interest arises. The Defendant Attorneys want this case to be about trade secret theft as Roger Chin advised Dr. Zirvi in April of 2017. If this Court were to hold that the present case is about trade secret theft, Defendant Attorneys would escape free on a time bar they helped to create.

However, the claim in this case is not based on trade secret theft. A claim regarding the failure of Illumina to name Dr. Zirvi as an inventor on its patents has not been litigated. Defendant Attorneys should know in order for issue preclusion, also known as, "…defensive collateral estoppel - a form of non-mutual issue preclusion - to apply, the party to be precluded must have had a "full and fair"

opportunity to litigate the issue in the first action. *Peloro v. U.S.*, 488 F.3d 163, 175 (3d Cir. 2007); citing *Parklane Hosiery*, 439 U.S. at 328, 332, 99 S.Ct. 645; *Blonder-Tongue Labs.*, 402 U.S. at 331, 333, 91 S.Ct. 1434. Dr. Zirvi has never had a "full and fair" opportunity to litigate the legal malpractice and civil conspiracy claims that have allowed Illumina's to exclude Dr. Zirvi as a named inventor on multiple Illumina's patents.

Defendant Attorneys argue that the allegedly culpable acts of the Moving Defendants occurred after the expiration of his claims in May 2014. This is a false statement because the claims at issue here are not the claims barred in the SDNY Litigation. However, even if the claims were the same Defendant Attorneys were all involved in the Cornell v. Illumina Litigation prior to its conclusion.

As such, the Defendant Attorneys should have honored Dr. Zirvi repeated requested to add the ZipCode technology claims into the Cornell v. Illumina Litigation. All Defendant Attorneys and firms were aware of Dr. Zirvi's request. Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading. See, e.g., *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) Subsection (a) allows a party to amend a complaint upon leave of court and states that leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Subsection (c) provides that an amendment arising out of the same conduct as that alleged in the original complaint will normally "relate back" to the complaint for statute of

limitations purposes. Id. 15(c). Combined, these provisions ensure that an inadvertent error in pleading will not preclude a party from securing relief on the merits of a claim. See, e.g., *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Therefore, even if the Defendant Attorneys are right regarding the SDNY Litigation acting as a bar based in part on the Cornell v. Illumina Litigation that could have been corrected by the Defendant Attorneys seeking leave of Court to amend the Cornell v. Illumina pleadings and have such amendment relate back to the 2010 filing. However, Dr. Zirvi still maintains that the claims in this lawsuit are unique from the claims in the SDNY Litigation.

The fact that Defendant Attorneys did not appear in the Delaware Litigation until September 2014 is of no consequence to Dr. Zirvi's claims in this case.

**D.    Dr. Zirvi Has A Protectable Interest Under 35 U.S.C. § 256**
As discussed at length herein Dr. Zirvi's claim in this litigation are not based on a trade-secret interest but rather his protectable interest under 35 U.S.C. § 256 to be a named inventory in the Illumina patents.

Likewise, his state claim for legal malpractice against the Defendant Attorneys may stand on their own before the Court without more. His state claim alleges Defendant Attorneys failure to assert a claim on in the Cornell v. Illumina Litigation; he should have been a party to the settlement agreement in the Cornell v. Illumina Litigation; and failure to ensure his interests were protected in that

settlement was malpractice. Finally, he claims that the Defendant Attorneys had an

obligation to raise potential and actual conflicts of interest with him and they did not

even bother to tell Dr. Zirvi that he was not represented by them until the twelfth

hour in the Cornell v. Illumina Litigation. This state claim is articulate more fully in

other sections of this memorandum.

**E.    Zirvi Has Pleaded The Existence Of An Attorney-Client Relationship**

In Complaint in this case alleges specific instances where the Defendant

Attorneys told Dr. Zirvi his interests were represented and acted as if they were

representing his interest. An attorney-client relationship can exist even in the

absence of "a specific retainer [agreement] memorializing" it. *Kaye v. Rosefielde*,

432 N.J. Super. 421, 477 (App. Div. 2013) (citing *Seidman v. Clifton Sav. Bank*, 205

N.J. 150, 169 (2009)), rev'd, in part on other grounds and remanded, 223 N.J. 218,

220-22 (2015) (reversing lower courts' blinkered view of their inherent discretion to

fashion equitable remedies and remanding only for new determination on remedy).

"To form an attorney-client relationship, it is enough that the attorney has voluntarily

agreed and acted as the client's legal advisor, and the client equally willingly sought

and was guided by the attorney's counsel." *Ibid*. While the attorney must

"affirmatively accept" that "professional responsibility," *Ibid*. (quoting *In re

Silverman*, 113 N.J. 193, 207 (1998)), the acceptance "need not necessarily be

articulated, in writing or speech but may, under certain circumstances, be inferred

from the conduct of the parties." Ibid. (quoting *In re Palmieri*, 76 N.J. 51, 58-59 (1978)).

In Cornell v. Illumina Litigation, the Defendant Attorneys acted as if they represented Dr. Zirvi until the very end when Dr. Zirvi was told he was on his own regarding an attempt to get an affidavit filed in that litigation. Clearly the abundance of communications and the content therein was enough to establish an attorney client relationship under New Jersey law.

In *Vance v. Scerbo*, No. A-2019-17T4 (N.J. Super. Ct. App. Div. Feb. 26, 2019), the court held that an out-of-state attorney who communicated with his clients via email and telephone from New Jersey, drafted and reviewed contracts involving New Jersey assets and parties, and filed a lawsuit in New Jersey on their behalf could be sued for legal malpractice in New Jersey.

- In *SCE Group, Inc. v. Garson*, No. 21-CV-19944 (D.N.J. July 26, 2022), the court distinguished between "normal incidents" of legal representation, such as making phone calls and sending letters, and "more substantial contacts" with the forum state, such as drafting contracts, declarations or pleadings involving the forum state's parties, conducting research, or appearing in court (which now is often done virtually). The court found that the latter type of contact could support specific jurisdiction over an out-of-state attorney. Evaluating dozens of emails of information and producing PowerPoints and holding WebEx conferences and multi-person

teleconferences are not "routine emails and phone calls". Refusing to file a declaration when one was done in the past solicited by Matthew Pearson and Akin Gump is also evidence of contact with the New Jersey jurisdiction. The drafts were done while plaintiff was in New Jersey. So, the legal work in submitting the declaration of Dr. Zirvi in IPR2016-00557 alone should satisfy the jurisdiction requirements for the state. Also not involving the plaintiff in the settlement contract has New Jersey implications because Illumina, ThermoFisher, Akin Gump and Latham & Watkins all regularly conduct business in New Jersey.

One case in which personal jurisdiction was exerted over out-of-state attorneys in New Jersey is *Zahl v. Eastland*, 465 N.J. Super. 79 (App. Div. 2020). *Zahl* involved a New Jersey plaintiff who sued his former Mississippi attorneys for legal malpractice and overbilling after they lost his federal civil rights case in New Jersey. The Appellate Division held that the New Jersey state court had personal jurisdiction over the out-of-state attorneys who were admitted pro hac vice in the federal case, based on similar factors as those considered in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). The factors that are relevant include the extent and nature of the attorney-client relationship, and whether it involved regular communication, supervision, or direction to a party in New Jersey. Also important is the foreseeability and causation of the harm or injury suffered by the client as a result of the attorney's conduct or advice. These conditions clearly existed between

Dr. Zirvi and the Defendants including Akin Gump (Matthew Pearson and Angela Verrecchio) and Latham & Watkins (Roger Chin and Douglas Lumish) and Rip Finst and Sean Boyle. There are over 370 emails marked among the various defendants (receiving information relevant to the case and in supplying legal advice and analysis, either via Memo, WebEx, PowerPoints, multi-person teleconferences or in person in Philadelphia, New York, Delaware and New Jersey. Plaintiff Zirvi received Exhibits 6, 7 and 8 (See ECF 1) filled with incorrect legal analysis and purposeful omissions which he trusted because he did not have access to information under the protective order in the Cornell v. Illumina Litigation that Defendant Attorneys possessed. Defendant Attorneys not only concealed the contents of such pertinent discovery, but also lied about its content by stating, for example, that the unredacted contents of the First Amendment Agreement did not have any relevance to Cornell or the Plaintiff. This could not be further from the truth. (See ECF 1, Exhibits 3, 9 and 14)

Inherent in the attorney-client relationship is the fiduciary duty to render full and fair disclosure of all material facts to the client. *In re Loring*, 73 N.J. 282, 289-90, 374 A.2d 466 (1977). Without the discovery rule, the limitations period would run from the occurrence of the negligent act. Therefore, a scoundrel would have an incentive to conceal material facts from or to misrepresent those facts to the client so that a malpractice claim would be time- barred. Applying the discovery rule to

legal-malpractice actions will remove the incentive to deceive and thus will preserve the fiduciary duty of full disclosure.

Therefore, we conclude that the discovery rule applies in legal-malpractice actions: the statute of limitations begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim. Several other states have also adopted that approach. See, e.g., *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982); *Laird v. Blacker*, 235 Cal.App.3d 1795, 279 Cal.Rptr. 700, 701, aff'd, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 552, 828 P.2d 691, 693 (1992); *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C.App.1989); *Magic World, Inc. v. Icardi*, 483 So.2d 815, 817 (Fla.App.1986); *Watson v. Dorsey*, 265 Md. 509, 290 A.2d 530, 533 (1972); *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple*, 394 Mass. 265, 475 N.E.2d 390, 391 (1985); *Luick v. Rademacher*, 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983); *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986); *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66, 67 (1979); *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 450 N.E.2d 684, 685 (1983); *Peters v. Simmons*, 87 Wash.2d 400, 552 P.2d 1053, 1056 (1976); *Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991).

In this case the damages were not realized from the legal malpractice until such time as the SDNY Litigation, and the appeals therefrom concluded. A trade secret claim, advised by Roger Chin, if successful could have made Dr. Zirvi whole.

As such, the malpractice claims are timely under New Jersey law as stated in *Grunwald v. Bronkesh*, 131 N.J. 483, 494-95, 621 A.2d 459, 464 (1993).

Finally, Dr. Zirvi's legal malpractice claims are supported, as required by New Jersey law, by a sworn statement of merit provided by an unrelated attorney having experience in the field of law and issues contained in the complaint (ZIRVI v. ILLUMINA, INC. et al, 2_23-cv-01997, No. 2 (D.N.J. Apr. 8, 2023, Exhibit 14). It is hard to imagine the Defendant Attorneys arguing that Dr. Zirvi hasn't done enough to state a claim of legal malpractice.

## II. FRAUD IS PLEAD WITH ENOUGH SPECIFICITY

Defendant wants the Court to apply the stringent standard of Rule (9) knowing that in all of the litigation prior to the present case, Dr. Zirvi has never been able to engage in discovery. The Third Circuit has applied a different standard that this Court should be "sensitive" to where no discovery has ever taken place.

> Despite Rule 9(b)'s stringent requirements, however, we have stated that "courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Shapiro*, 964 F.2d at 284 (citing *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983)). **Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control**. See *Shapiro*, 964 F.2d at 285. But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice. *Id*. Plaintiffs must accompany their legal theory

with factual allegations that make their theoretically viable claim plausible. *Id*.

*In re Burlington Coat Factory*, 114 F.3d 1410, 1418 (3d Cir. 1997).

The Complaint is far from boilerplate and sets forth the foundation of fraudulent conduct perpetrated by the Defendants, elucidated through careful presentation of communication and materials attached to the Complaint. ECF No. 1 Exhibits 5-8, 12 and 13. Contrary to Defendant Attorneys' assertions, the Plaintiff provides more than a mere speculative nexus between Defendants' actions and the alleged fraudulent omission in the Cornell v. Illumina Litigation.

The pleading standards, reaffirmed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), mandate that a complaint need not establish a prima facie case but must plead "enough facts to state a claim to relief that is plausible on its face." Plaintiff's claims materially satisfy the pleading requirement under Rule 9(b), which obligates that "a party must state with particularity the circumstances constituting fraud." ECF No. 1 Exhibits 5-8, 12 and 13 chronicle extensive correspondence and internal documents that reflect a deliberate and informed decision to exclude critical information related to intellectual property misuse from the Cornell v. Illumina Litigation. Specifically, Defendants' conscious disregard and intentional omission of vital information that

directly impacted the outcome and financial settlement of Cornell v. Illumina, contravening the assertion that no fraud was committed or plead.

The Complaint makes the following specific allegation of fraud:

EFC No.1 paragraph 25, "…Plaintiff requested to file a declaration to introduce this evidence to the court, yet inexplicably, Attorneys denied this request. (See Exhibit 12 for Draft of Declaration written by Plaintiff and emailed about to Defendants including Rip Finst, Matthew Pearson, Roger Chin and Douglas Lumish shortly prior to the signing of the settlement agreement in Cornell v Illumina. Plaintiff specifically requested for their help to edit and submit this to the US District Court in Delaware as a Third Party with an interest.)

EFC No.1 paragraph 26, "Unbeknownst to Plaintiff or Cornell at the time, Cornell v Illumina (1:10-cv-00433-LPS) was fraudulently settled by Illumina and ThermoFisher, simultaneously with several other lawsuits involving Illumina and ThermoFisher, in April 2017. Tellingly, Attorneys Roger Chin and Doug Lumish were working on the other cases involving Illumina and ThermoFisher but failed to disclose their obvious conflict of interest to either Plaintiff or Cornell. The settlements, while benefiting Illumina and ThermoFisher, completely undermined the rights of the Plaintiff.

EFC No.1 paragraph 29, "…International Patent Application No. W097/31256 is an invention that was submitted before Illumina even existed, with Dr. Zirvi as a coinventor. In the First Amendment Agreement, it states: "The Parties will share responsibility for defining and developing Tag Sequences for the Collaboration Product which will attempt to avoid third party intellectual property rights or other encumbrances."  In other words, this was collusion by Illumina and ThermoFisher to apparently defraud third parties, such as Cornell and the Plaintiff…

The term fraud was used 37 times in the Complaint, often including a description of the alleged fraud. See e.g., paragraphs 30, 40, 43, 44, and 52. Dr. Zirvi has plead fraud with enough particularity to pass either the heightened or lesser standard articulated in  *In re Burlington Coat Factory.*

### III. THIS MATTER SHOULD NOT BE TRANSFERRED.

The Defendant Attorneys ask this Court to transfer this matter in the alternative to the New York claiming that the Court can change the venue "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, the Defendant Attorneys do not indicate what convenience they believe entitle them to such relief.

The Defendant Attorneys cite *Canon Fin. Servs., Inc. v. JL Barrett Corp.*, No. 10-cv-4117, 2010 WL 4746242, *3 (D.N.J. Nov. 16, 2010) (courts have "frequently

held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue") (citing cases). Such transfers "eliminate[] the possibility of inconsistent results . . . and conserve[] judicial resources." *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004). However, there is no pending case in the Southern District of New York. Therefore, no reason to transfer under such case law.

While the Defendant Attorneys claim "Zirvi's filing in this district appears to be simply an effort to avoid the res judicata effect of the judgment in the prior action against Thermo Fisher and Illumina that he filed on the other side of the Hudson River." This Court applies the same law regarding res judicata as the courts located in New York. It is the Defendant Attorneys who are forum shopping not Dr. Zirvi who has the right to have is New Jersey claims heard in the Courts located in New Jersey.

Defendant Attorneys Roger Chin and Matthew Lumish seek to transfer this matter to California based on a retainer agreement Dr. Zirvi did not sign and therefore did not consent to be bound by its choice of law or jurisdiction clauses. It is as if the Defendant Attorneys would rather this matter be heard anywhere but New Jersey. However, the Defendant Attorneys offer no valid grounds for moving this case anywhere else.

*IV. CONCLUSION*

Given the allegations supported by detailed exhibits, Defendants' Motions to Dismiss should be denied in its entirety and the Complaint should be accepted. In the alternative Dr. Zirvi should be allowed to address any deficiencies by way of an amendment if the Court so Orders. The requests to transfer to New York or California should be denied. The Defendant Attorneys should be required to file an Answer in this matter as the Court so Orders.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed and service through the Court's ECF filing system on all parties of record on this 2nd of October 2023.

Respectfully submitted,

**LORIUM LAW**
*Attorneys for Plaintiff, Dr. Monib Zirvi*
101 N.E. 3rd Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 462-8000
Facsimile:  (954) 462-4300

By:___/s/ *Joseph D. Garrity*_____
      JOSEPH D. GARRITY
      Florida Bar No. 87531
      jgarrity@loriumlaw.com