# Exhibit 3




**Joseph D. Garrity, Esq.**
101 N.E. THIRD AVENUE, SUITE 1800
FORT LAUDERDALE, FLORIDA 33301
(954) 462-8000
www.loriumlaw.com

July 10, 2023

VIA EMAIL and U.S. MAIL
jbach@shapiroarato.com

Jonathan P. Bach, Esq.
Shapiro Arato Bach LLP
1140 Avenue of the Americas
17th Floor
New York, NY 10036

Re: Zirvi v. Illumina, Inc., et al., No. 23-cv-1997, D.N.J.

Dear Jonathan:

This firm represents Dr. Monib Zirvi in the above-referenced matter. We are in receipt of your letter dated June 15, 2023. As a preliminary matter, we have not had the opportunity to discuss the merits of either side's position in this matter. All sides benefit from such verbal exchanges rather than the current hyper-electronic age of type and send. Issues can often be resolved without one electronic missive fired.

Certainly, without as much as a phone call to understand the Plaintiff's position or explain your own, the threat of filing a Rule 11 motion seems more tactical than substantive. I do not wish to engage in a tit for tat exchange prior to having one substantive phone call regarding this case yet here we are.

Respectfully, filing a Rule 11 motion at such an early stage often incentivizes the recipient to file a responsive Rule 11 motion or other motion for sanctions. See, e.g., *Krantz v. Owens*, 168 N.C. App. 384, 607 S.E.2d 337 (2005) (considering trial court's order on Rule 11 motion filed in response to opposing party's Rule 11 motion). There are examples of these sanctions for Rule 11 motions succeeding. See, e.g., *Burgess v. Am. Express Co.*, 2007 NCBC LEXIS 22 (N.C. Super. Ct. June 29, 2007) (granting Rule 11 motion based on opponent's Rule 11 motion); *Claudet v. First Fed. Credit Control, Inc.*, 2015 U.S. Dist. LEXIS 165076, *9 (M.D. Fla. Nov. 17, 2015) (imposing Rule 11 sanctions for filing Rule 11 motion).

Your letter indicates that you believe the basic doctrines of claim preclusion and judicial findings regarding the statute of limitations running bar the present lawsuit. Your letter then indicates all claims arose from two acts of misappropriation that occurred in 1994 and

1999. The present lawsuit does not arise out of the occurrences referenced in your letter. This lawsuit arises out of the scheme put in place and conducted by the Defendants to prevent Dr. Zirvi's recognition and compensation as a significant contributor to multiple patents that have generated billions of dollars in revenue.

Your clients, Thermo Fisher and Rip Finst, were at the forefront of the scheme. The combination of Corporate Defendants and Lawyer Defendants conspired to put whatever claims Dr. Zirvi had regarding his ZipCodes forever out of reach. The conspiracy did not reach its conclusion until the very case you argued on appeal, *Zirvi v. Flatley*, No. 1:18-cv-07003, reached its conclusion. The present lawsuit could not be clearer that the conspiracy by Defendants was to run out the clock on Dr. Zirvi's claims regarding his ZipCodes, which you yourself successfully argued on appeal.

The following is excerpted from your oral argument in the *Zirvi v. Flatley* appeal:

> …The so-called 'crown jewels' were disclosed by Mr. Zirvi and Dr. Barany in a patent as far back as 2001. This patent included all of the 16 zip code sequences that my friend just spoke about, as well as thousands of others.
>
> If you ask where that is in the record, it's in our brief. I'll have to find a specific cite, but we're talking about an application - the '965 patent. This patent was filed by plaintiff Zirvi and Dr. Barany of Cornell in August 2000. It was published internationally in 2001 and issued as a U.S patent in 2008. It disclosed all of the optimal zip code sequences and also disclosed an 18-step algorithm for anyone reading the patent to generate them, as well as a software code connected to that algorithm. Thus, the recipe for generating these zip code sequences, as well as the crown jewels, was disclosed some 17 years before this lawsuit was filed.

Indeed, it was the '965 patent and the 16 ZipCodes that Dr. Zirvi fought your clients to include in the *Cornell* litigation. ThermoFisher, in a conspiracy with attorneys from Akin Gump and Latham Watkins, deliberately excluded this seminal patent as well as the unredacted First Amendment to the Joint Development Agreement, from the court in *Cornell* litigation. However, the ultimate goal of the conspiring Defendants was to ensure that Dr. Zirvi's claim died on the vine, which was only achieved upon the completion of *Zirvi v. Flatley*.

Notably, during the *Cornell* litigation, Cornell sought to set aside the April 14, 2017, Settlement Agreement by filing a Rule 60(b)(6) Motion. In response Illumina argued the Settlement agreement could not be set aside because Rip Finst, as an employee of Thermo Fisher, bound the parties regardless of his fraudulent activities and conflicts of interest. This allegation from Illumina, rather than Dr. Zirvi, is further reason there is no basis for your Rule 11 letter.

Specifically, in the *Cornell* case, [DE 690] and [698] Illumina's Joinder and Declaration respectively, Illumina argues that fraud by an agent of ThermoFisher, Rip Finst, should not be allowed to undo the settlement agreement, stating:

> Thus,….where Life Tech acted with at least apparent authority from Cornell, regardless of whether Life Tech may have acted improperly toward Cornell. The….regardless of the outcome of Life Tech's and Cornell's dispute. See *Crumlish v. Price*, 266 A.2d 182, 183–84 (Del. 1970) ("A principal is bound by an agent's apparent authority which he knowingly permits the agent to assume of which he holds the agent out as possessing."); Rest. 3d Agency, §2.03 (2006) ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."). **Contracts made by an agent with apparent authority are valid against a third party even if fraudulent with respect to the principal**. See *Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 218–22 (3d Cir. 2010) (employer bound to credit card charges allegedly fraudulently made by employee); *Liberty Mut. Ins. Co. v. Enjay Chem. Co*., 316 A.2d 219, 223 (Del. 1974) (holding principal liable for loss where agent fraudulently converted payments made to agent by innocent third party who reasonably believed agent was acting on behalf of the principal).

Here, Illumina clearly implicates Rip Finst as the agent of Thermo Fisher whose fraudulent behavior affected Dr. Zirvi. Notably, the Settlement Agreement referred by Illumina related to rights and royalties belonging to Dr. Zirvi, yet he has never seen the Agreement because of active concealment by the Defendants and claims related to the Settlement Agreement remain open to claims even beyond those pending in the present lawsuit.

Conversely, *Zirvi v. Flatley* was a trade secret lawsuit prepared based on the information Plaintiff received from Rip Finst and Roger Chin (See Exhibit 8 of the Complaint) during the *Cornell* litigation. Of course, there were no claims of legal malpractice or claims seeking to add Dr. Zirvi as an inventor to the Illumina patents brought in *Zirvi v. Flatley*. In addition, the Defendants are not identical in both cases. This case includes the lawyers who provided misleading and wrong legal advice regarding Dr. Zirvi's rights in the *Cornell* lawsuit.

Only after Dr. Zirvi pursued his claim related to trade secrets, and not until the Order dismissed Zirvi *v. Flatley* did Dr. Zirvi discover the origin and existence of his injuries as related to the conduct of the lawyers who failed to protect his rights in the earlier litigation.

The malpractice claims are timely under New Jersey law as stated in *Grunwald v. Bronkesh*, 131 N.J. 483, 494-95, 621 A.2d 459, 464 (1993):

> Inherent in the attorney-client relationship is the fiduciary duty to render full and fair disclosure of all material facts to the client. *In re Loring*, 73 N.J. 282, 289-90, 374 A.2d 466 (1977). Without the discovery rule, the limitations period would run from the occurrence of the negligent act. Therefore, a scoundrel would have an incentive to conceal material facts from or to misrepresent those facts to the client so that a malpractice claim would be time-barred. Applying the discovery rule to legal-malpractice actions will remove the incentive to deceive and thus will preserve the fiduciary duty of full disclosure.
>
> Therefore, we conclude that the discovery rule applies in legal-malpractice actions: the statute of limitations begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim. Several other states have also adopted that approach. See, e.g., *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982); *Laird v. Blacker*, 235 Cal.App.3d 1795, 279 Cal.Rptr. 700, 701, aff'd, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 552, 828 P.2d 691, 693 (1992); *Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C.App.1989); *Magic World, Inc. v. Icardi*, 483 So.2d 815, 817 (Fla.App.1986); *Watson v. Dorsey*, 265 Md. 509, 290 A.2d 530, 533 (1972); *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple*, 394 Mass. 265, 475 N.E.2d 390, 391 (1985); *Luick v. Rademacher*, 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983); *Wall v. Lewis*, 393 N.W.2d 758, 761 (N.D.1986); *Jaramillo v. Hood*, 93 N.M. 433, 601 P.2d 66, 67 (1979); *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 450 N.E.2d 684, 685 (1983); *Peters v. Simmons*, 87 Wash.2d 400, 552 P.2d 1053, 1056 (1976); *Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991).

The malpractice claims are supported, as required by New Jersey law, by a sworn statement of merit provided by an unrelated attorney having experience in the field of law and issues contained in the complaint (ZIRVI v. ILLUMINA, INC. et al, 2_23-cv-01997, No. 2 (D.N.J. Apr. 8, 2023, Exhibit 14).

I believe that my client has never had a determination of the merits of the claims brought in the current lawsuit. The claims are not barred by prior ruling, and all brought within relevant statute of limitations. The case does not seek relief of acts that took place in 1994 or 1999. Rather, the acts complained of in the present lawsuit stem from actions that took place as part of the *Cornell* suit, many of which were unknown to Dr. Zirvi during the

litigation, at the time of the settlement of the litigation, and during subsequent litigation involving trade secrets pertaining to ZipCodes.

Sanctions may not be imposed under Section 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). Here there is far more than well-intended zeal. There is both legal support and factual support for the claims. Admittedly, the claims are complicated but broil down to a concerted effort on the Defendants to preclude Dr. Zirvi from enforcing individual rights. The claims made state that Dr. Zirvi's rights should have been protected but that an ulterior motive existed beyond the purview of Dr. Zirvi that caused the damage contained in the complaint. Perhaps it was the fact that your client, ThermoFisher, as alleged in the Complaint was secretly collaborating with Illumina to develop "Ampliseq for Illumina" during the entire time they were representing Plaintiff – a knowingly deliberate conflict of interest. Rule 11 is intended to deter frivolous suits, not to deter novel legal arguments or cases of first impression. *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.*, 827 F.2d 1454, 1987 U.S. App. LEXIS 12535 (11th Cir. 1987).

Finally, as stated at the beginning of this letter, this litigation is in its infancy. I have no opposition to the multiple extensions of time you and other defendants requested. However, I would point out that even litigants faced with successful Motions to Dismiss typically are not sanctioned. *Alston v. Speigel* (In re Ames), 993 F.3d 27 (Even though district court deems pleaded claim frivolous, it may nonetheless give pleader chance to re-plead and add facts to amended complaint in order to breathe life into claim; but leave to amend does not immunize attorney who elects to amend despite absence of any nonfrivolous support for amended pleading.). Therefore, your decision to send a Rule 11 motion without discussing the same is premature. I would ask that you extend the time to consider the withdrawal of the Complaint until twenty-one (21) days after the date of your first responsive filing.

Should you have any questions please feel free to contact me at my office or on my cell phone at (954) 821-7204.

Sincerely,

Joseph D. Garrity

Joseph D. Garrity, Esq.
For The Firm