<u>**CLOSING**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 26, 2024

<u>VIA ECF</u>

<u>**LETTER ORDER**</u>

Re:   <u>Monib Zirvi, M.D., Ph.D. v. Illumina, Inc. et al.</u>
       <u>Civil Action No. 23-1997</u>

Dear Litigants:

Before the Court are three motions to dismiss Plaintiff Monib Zirvi's ("Zirvi") Complaint, ECF No. 1.

First, Defendant Illumina Inc.'s ("Illumina") Motion to Dismiss Zirvi's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Illumina's Motion").  ECF No. 63.

Second, Defendants Thermo Fisher Scientific ("Thermo Fisher"), Rip Finst ("Finst"), Sean Boyle ("Boyle") (Thermo Fisher, Finst, and Boyle, collectively, the "Thermo Fisher Defendants"), Akin Gump Strauss Hauer & Feld LLP ("Akin"), Matthew A. Pearson ("Pearson"), Angela Verrecchio ("Verrecchio"), (Akin, Pearson, and Verrecchio, collectively, the "Akin Defendants"), Latham & Watkins LLP ("Latham"), Roger Chin ("Chin"), and Douglas Lumish's ("Lumish") (Latham, Chin, and Lumish, collectively, the "Latham Defendants") Motion to Dismiss Zirvi's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendants' Motion").  ECF No. 82.

Third, the Latham Defendants' Motion to Dismiss Zirvi's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) ("Latham Motion").[1]  ECF No. 84.[2]

Because the claims asserted are a repackaging of the same claims summarily dismissed by the District Court in the Southern District of New York, Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

---

[1] The Latham Motion pleads 12(b)(2) and 12(b)(3), only if the Plaintiff's Complaint proceeds.  <u>See</u> Latham Mot. at 8.  As the Court is dismissing the Complaint, it will only consider the Latham Motion under 12(b)(6).

[2] Also before the Court are two motions for Rule 11 Sanctions: first, Illumina's Motion for Sanctions against Zirvi ("Illumina Sanctions Motion"), ECF No. 99; and second, Thermo Fisher and Finst's Motion for Sanctions against Zirvi ("Thermo-Finst Sanctions Motion") (Illumina Sanctions Motion and Thermo-Finst Sanctions Motion, collectively, the "Sanctions Motions"), ECF No. 104.

I.   **BACKGROUND**

In this newest Complaint, Plaintiff expands on the same wide-ranging conspiracy theories that were dismissed in the Southern District—that the defendant biotechnology companies, Illumina and Thermo Fisher, were engaged in a two-decade conspiracy to steal trade secret and intellectual property.  The new Complaint tells the same story, but expands the misappropriation claims, asserts new claims of fraud, and now claims that the lawyers were in on it.

A brief review of the background facts and the various lawsuits involving the Parties is in order.

### A.   Zirvi's ZipCodes

In the 1990s, Zirvi worked in a Cornell University Medical College laboratory developing DNA diagnostic technology, including "ZipCode sequences" for incorporation into mass-produced DNA microchips.  Compl. ¶¶ 9–14.  During that time, Zirvi allegedly worked independently on a separate data set of ZipCodes that was his trade secret.  <u>Id.</u> ¶ 14.  Zirvi intended to incorporate his ZipCode operating system "into the manufacture of DNA microchips and receive royalties through the licensing of the invention."  <u>Id.</u> ¶ 13.  According to Zirvi, Illumina wrongfully obtained his data set and incorporated it into patents, products, and SEC filings in 2000.  <u>Id.</u> ¶ 14.  The use of ZipCodes by Illumina became the subject of several litigations.  <u>Id.</u> ¶ 15.

### B.   2006 Patent Interference Claim

In 2006, Zirvi, along with others, brought a patent interference claim before the United States Patent and Trademark Office ("USPTO"), alleging that the Chief Technology Officer of Affymetrix, a division of Thermo Fisher, unlawfully derived a 1994 patent application and a related family of patents from a grant proposal that incorporated Zirvi's ZipCodes.  <u>Zirvi v. Flatley</u>, 433 F. Supp. 3d 448, 457 (S.D.N.Y.), <u>aff'd</u>, 838 F. App'x 582 (2d Cir. 2020) (the "SDNY Litigation").  The Board of Patent Appeals concluded that Zirvi's claim failed to establish that the Affymetrix inventors derived their subject matter from the grant proposal research.  <u>Id.</u>

### C.   The Delaware Litigation

On May 24, 2010, Cornell University, Cornell Research Foundation, Inc., Life Technologies Corporation (purchased by Thermo Fisher in 2014), and Applied Biosystems, LLC (collectively, "Cornell") sued Illumina for patent infringement in the U.S. District Court for the District of Delaware.  Compl. ¶ 15; <u>see</u> SDNY Litigation, 433 F. Supp. 3d at 457; <u>see</u> <u>Cornell Univ. v. Illumina, Inc.</u>, No. 10-433, 2017 WL 89165, at *1 (D. Del. Jan. 10, 2017) (the "Delaware Litigation").  During the Delaware Litigation, Thermo Fisher was represented by, among others, Finst, Boyle, the Akin Defendants, and the Latham Defendants (collectively, the "Attorney Defendants").  Compl. ¶ 17.  Zirvi, who was not a party to the Delaware Litigation, served as a fact witness and was deposed in 2015.  SDNY Litigation, 433 F. Supp. 3d at 458.  According to Zirvi, the Attorney Defendants advised him that his interests were aligned with those of plaintiffs in the Delaware Litigation and that, as such, they "represented his interests."  Compl. ¶¶ 18–19; SDNY Litigation, 433 F. Supp. 3d at 458.

The patents at issue in the Delaware Litigation are the same patents as those at issue in this

Action.  Compl. ¶¶ 40, 43; see also SDNY Litigation, 433 F. Supp. 3d at 463.  The Delaware Litigation was settled in April of 2017, but Cornell, in June of 2017, moved to vacate the settlement; its motion was denied in March 2018.  Compl. ¶¶ 25–30; Defs.' Mot. at 6, ECF No. 82.  Zirvi believes that the Delaware Litigation plaintiffs attempted to vacate the settlement because they discovered "fraud and collusion" by and between Illumina and Thermo Fisher.  Compl. ¶ 30.

### D.  The SDNY Litigation

In 2018, Zirvi, along with three former colleagues, filed the SDNY Litigation against "scientists and businesspeople Jay Flatley, David Walt, Stephen Fodor, Kevin Gunderson, Jian-Bing Fan, Mark Chee, and John Stueplnagel, a patent lawyer Robin Silva, and biotechnology companies Affymetrix, P.E. Applied Biosystems[3], and Illumina, Inc." alleging claims under,

> the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, et seq.; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq.; the New York common law of trade secrets protections; and claims for other common law torts of fraud, conversion, tortious interference with prospective business advantage, inequitable conduct, civil conspiracy, and breach of confidence.

433 F. Supp. 3d at 453.

The court in the SDNY Litigation summarized Zirvi's allegations:

> The gravamen of the Complaint is that the defendants misappropriated the plaintiffs' trade secrets in violation of both federal and New York state law in 1994 and 1999. The plaintiffs argue that two separate acts of alleged misappropriation – (1) Fodor's misappropriation of the Barany proposal in 1994, and (2) the Illumina defendants' misappropriation of Barany's and Zirvi's proprietary 465 zip codes in 1999 – resulted in the defendants' wrongful ownership of trade secrets that broadly fall into three categories – (1) positive trade secrets contained in the 1994 Barany proposal, (2) positive trade secrets contained in the 1999 proprietary zip codes, and (3) negative trade secrets derived from both acts of misappropriation that include the experimental knowhow and dead ends that allegedly have independent economic value to a competitor seeking to replicate the plaintiffs' experimental results.

Id. at 458.

The court in the SDNY Litigation found that (1) plaintiffs' claims were time-barred because the alleged misappropriation occurred as far back as 1994 and 1999; (2) Illumina's patent filing in 2000 put Zirvi on constructive notice of his claims; and (3) the 2006 patent litigation and 2010 Delaware Litigation triggered accrual, therefore "whether the accrual date was in 1994, 1999, 2006, or 2010, the federal statutes of limitations have long since passed." Id. at 459–60.  The same facts preclude the plaintiffs' state law claims.  See id. at 461 (finding that "whether governed by the three-year or six-year limitations period. . . [t]he alleged misconduct in this case occurred in

---

[3] Affymetrix and Applied Biosystems are divisions of Thermo Fisher.  See Defs.' Mot. at 7, ECF No. 82.

1994 and 1999, at which point the claims accrued, and therefore the state law claims are barred by the statutes of limitations."). The Second Circuit affirmed, finding that, at best, the SDNY plaintiffs' federal claims "began to run no later than the dates of the 2006 patent interference proceedings before the [USPTO] and the 2010 [Delaware Litigation]." Zirvi v. Flatley, 838 F. App'x 582, 585 (2d Cir. 2020) (internal citations omitted).

The SDNY court also found that plaintiffs failed to plead a single state or federal claim upon which relief could be granted. SDNY Litigation, 433 F. Supp. 3d at 463–67.

### E. This Action

On April 8, 2023, Zirvi filed his Complaint in this Court bringing Count I, for correction of inventorship of 52 Illumina patents pursuant to 35 U.S.C. § 256 against Illumina; Count II, for legal malpractice against the Attorney Defendants; Count III, for Fraud against Thermo Fisher and the Attorney Defendants; and Count IV, for civil conspiracy against all Defendants. See generally Compl.

For Count I against Illumina, Zirvi alleges that Illumina obtained patents that "incorporate inventive steps derived from [Zirvi's] intellectual property and copyrights," that Zirvi "contributed novel concepts and work to the inventions," and that Zirvi's ZipCodes were improperly appropriated for use in the patents. Compl. ¶¶ 55–61.

For Count II, Zirvi alleges that Attorney Defendants "failed to represent Plaintiff during settlement negotiations," or "failed to inform Plaintiff during the [Delaware Litigation] that they were not going to represent Plaintiff's interest." Id. ¶¶ 63–68. According to Zirvi, this caused him to lose his right of enforcement against Illumina in an individual matter because he believed his claims would be resolved as part of the Delaware Litigation. Id. By the time he brought his claims, they were time-barred. Id.

For Count III, Zirvi alleges that Thermo Fisher and Attorney Defendants misrepresented that "they would represent Plaintiff and in fact did represent Plaintiff in preparing and defending his deposition," and "that Plaintiff's interest and ThermoFisher's interest were aligned" so that Zirvi would not hire his own attorney to represent his interests in intellectual property or, through his own attorney, be involved in the Thermo Fisher-Illumina settlement. Id. ¶¶ 78–87.

For Count IV, Zirvi alleges that Defendants worked together to deprive him of his intellectual property rights by "pretending to be engaged in a legitimate fight within the confines of a court case over the intellectual property" while Illumina and Thermo Fisher "had an agreement between each other to inflict harm upon Plaintiff by constructing an agreement that would make it impossible for Plaintiff [to] enforce his right to his intellectual property." Id. ¶¶ 92–99. As part of this scheme, Thermo Fisher and Attorney Defendants "would feign to be averse to Illumina while at the same time working together to usurp Plaintiff's Intellectual Property Rights for their own use and benefit." Id.

The instant Motions followed.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

The Court dismisses Zirvi's Complaint with prejudice because (1) Zirvi's four claims for inventorship, legal malpractice, fraud, and civil conspiracy are all barred by claim preclusion; and (2) he fails to state any claims upon which relief can be granted.

### A. Res Judicata (Claim Preclusion)

Defendants argues that Zirvi's action is precluded under the doctrine of res judicata.[4] The Court agrees.

Res judicata,[5] also known as claim preclusion, applies when there has been "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." United States v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir. 2009) (quoting EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990)). It requires a plaintiff to bring in one suit "all the claims for relief that he may have arising out of the same transaction or occurrence." Lubrizol Corp. v. Exxon Corp., 929 F. 2d 960, 964 (3d Cir. 1991) (internal citations omitted). Those elements are present here.

The SDNY Litigation presents a final judgment on the merits in a prior suit. The SDNY Litigation found that all of plaintiffs' claims, including trade secrets, fraud, and civil conspiracy, were time barred and failed to state a claim. See generally 433 F. Supp. 3d; see also Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 173 (3d Cir. 2009) (finding that "a dismissal on statute-of-limitations grounds" is "a judgment on the merits"). The SDNY litigation involved the same parties or those in privity. Zirvi was a plaintiff in the SDNY Litigation and Illumina was a defendant. Thermo Fisher, through its wholly owned divisions, Affymetrix and Applied Biosystems, was also a party in both actions. While Attorney Defendants, who were either in-

---

[4] Res judicata and collateral estoppel are affirmative defenses, but they may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Walzer v. Muriel, Siebert & Co., 221 F. App'x 153, 155 (3d Cir. 2007).

[5] The term "res judicata" broadly encompasses two concepts: claim preclusion and issue preclusion. Many courts and commentators use "res judicata" narrowly to mean claim preclusion and "collateral estoppel" to mean issue preclusion. See Brownback v. King, 141 S. Ct. 740, 747 n. 3 (2021) (explaining the nomenclature of claim and issue preclusion). The Court will follow the latter framework in discussing Defendant's preclusion arguments.

house or outside counsel to Thermo Fisher in the Delaware Litigation, are new to this Action, they are all in privity with Thermo Fisher. See Copeland v. US Bank Cust PC5 Sterling Nat'l, No. 20-07016, 2021 WL 2134942, at *8 (D.N.J. May 26, 2021) (finding that, for the purposes of claim preclusion, where attorneys represented defendants in a prior litigation, allegations against them were "inextricably intertwined to those asserted against the defendants" in the prior litigation).

The claims in this Action and in the SDNY Litigation are the same. "Suits involve the same claim (or cause of action) when they arise from the same transaction or involve a common nucleus of operative facts." Lucky Brand Dungarees, Inc. v. Marcel Fashions, Grp., Inc., 140 S. Ct. 1589, 1595 (2020) (internal citations omitted). "This analysis does not depend on the specific legal theory invoked, but rather the essential similarity of the underlying events giving rise to the various legal claims." Elkadrawy, 584 F.3d at 173 (3d Cir. 2009) (internal citations omitted). "[R]es judicata bars not only claims that were brought in [a] previous action, but also claims that could have been brought." Id. (finding that the focal points of the courts analysis is "whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same.") (internal citations omitted).

The SDNY Litigation asserted claims of inventorship, malpractice, and fraud, stemming from plaintiff's intellectual property relating to DNA sequencing while working at Cornell labs in the 1990s. The SDNY Litigation and this Action both rest on the same general theory that Illumina and Thermo Fisher orchestrated a large conspiracy to deprive Zirvi of his intellectual property rights and trade secrets, including through Defendants actions during the Delaware Litigation. Compare SDNY Litigation with Compl.

First, although Zirvi did not bring an inventorship claim in the SDNY Litigation, he could have, and it is thus barred by res judicata. See Cisco Sys., Inc. v. Alcatel USA, Inc., 301 F. Supp. 2d 599, 603 (E.D. Tex. 2004) (finding that where a party brought a trade secret misappropriation claim before the court, it could not make "a mere change in legal theory" requesting "declaratory relief as to the ownership of the appropriated materials" because the "factual predicates" for the new claim were "based on the same nucleus of operative facts as those in the underlying suit."). Zirvi's inventorship claim in this action mirrors his trade secrets claim in the SDNY Litigation. In fact, both claims are based on the same allegedly misappropriated DNA ZipCode sequences. See Illumina Mot. at 17. In his own Complaint, Zirvi even asserts that the same ZipCode sequences which were the subject of both the SDNY Litigation and this Action, "were protectable as patentable subject matter and as a trade secret." Compl. ¶ 11 (emphasis added).

Second, although Zirvi's malpractice claim involves entirely new parties, the Attorney Defendants (representatives for Thermo Fisher in the Delaware Litigation) are in privity with Thermo Fisher, an SDNY Litigation defendant. See Jackson v. Dow Chem. Co., 902 F. Supp. 2d 658, 671 (E.D. Pa. 2012) ("An attorney-client relationship may justify application of claim preclusion even when the attorney was not a party to the prior suit."), aff'd, 518 F. App'x 99 (3d Cir. 2013). The malpractice claim, while not brought in the SDNY Litigation, is based on the recycled theory that Thermo Fisher conspired with Illumina to deprive Zirvi of his intellectual property and trade secrets. Under that theory, Zirvi could have brought a malpractice claim in his

prior suit. Indeed, in the SDNY Litigation Second Amended Complaint (the "SDNY SAC") plaintiffs make direct reference to lawyers' involvement in the scheme. See Declaration of Michael S. Stein ("Stein Decl"), Ex. 2 (SDNY SAC) ¶¶ 7–9, ECF No. 82.4.[6]

Finally, because fraud and conspiracy were brought in the SDNY Litigation, res judicata bars Zirvi from realleging them here. Although these claims include new defendants, the new defendants are in privity with Thermo Fisher. Both claims, in SDNY and in this Action, are based on the same set of ZipCodes and share "a common nucleus of operative facts": an alleged conspiracy to misappropriate Zirvi's ZipCodes. See Lucky Brand Dungarees, Inc., 40 S. Ct. at 1595; Defs.' Mot. at 15–17, ECF No. 82; Illumina Mot. at 18, ECF No. 63.[7]

The Court therefore finds that all four of Zirvi's claims are barred by claim preclusion.

### B. Doctrine of Laches

Illumina also argues that Zirvi's first claim—the correction of inventorship of 52 Illumina patents pursuant to 35 U.S.C. § 256—is barred by the doctrine of laches. The Court agrees.

> Laches is an equitable defense that may bar an inventorship claim. To prevail on a defense of laches, a defendant must establish that (1) the plaintiff's delay in filing a suit was unreasonable and inexcusable; and (2) the defendant suffered material prejudice attributable to the delay. Further, a rebuttable presumption of laches attaches whenever more than six years passes from the time a purportedly omitted inventor knew or should have known of the issuance of the relevant patent.

Lismont v. Alexander Binzel Corp., 813 F.3d 998, 1002 (Fed. Cir. 2016) (internal citations omitted). Every patent over which Zirvi claims an inventorship rights was issued over six years ago—creating a rebuttable presumption of laches—and was discussed in detail in the SDNY Litigation, thus putting Zirvi on notice of his omission on the patents as a purported inventor. See also Illumina Mot. at 21–22.

### C. 12(b)(6) Analysis

#### 1. Count I: Correction of Inventorship

Zirvi fails to plead a cognizable injury and therefore does not have standing to sue Illumina for inventorship. To state a claim for inventorship, "a plaintiff must allege some redressable

---

[6] In the SDNY SAC, plaintiffs allege that attorneys were involved in the scheme: "[i]n the [Delaware Litigation] prior to his deposition and for a period immediately afterwards, Doctor Zirvi was specifically instructed by the lawyers for ThermoFisher not to look at any patents or any other scientific material that could be used as evidence in the case. Doctor Zirvi could not have known at the time, that ThermoFisher a defendant and co-conspirator in this case, had its own nefarious reasons for this instruction. Only after his deposition, in August 2015, did the lawyers for ThermoFisher instruct the inventors to actually search for any patents and/or other documents that might be used as evidence." Id.

[7] The SDNY SAC and the instant Complaint both include allegations of (1) collusion between Illumina and Thermo Fisher in developing Ampliseq for Illumina during the Delaware Litigation, (2) a plan to defraud third parties, including Zirvi, of their royalties, and (3) a fraudulent settlement of the Delaware Litigation through collusion. Defs.' Mot. at 15, ECF No. 82; Illumina Mot. at 9, 18–19, ECF No. 63.

7

economic harm that directly flows from the incorrect listing of inventors on a patent." Feuss v. Enica Eng'g, PLLC, No. 20-2034C, 2021 WL 1153146, at *3 (D.N.J. Mar. 26, 2021). Zirvi alleges economic harm from loss in royalties because of Illumina's use of his ZipCodes in its patents. Compl. ¶¶ 38, 47. But, as Zirvi concedes, his claim to those royalties is time-barred. Id. ¶ 86. Even if it was not, Zirvi does not allege the existence of any royalties agreement and only alleges that his "intent" was to "receive royalties through the licensing of the invention." Id. ¶ 13. Without alleging the existence of a royalties agreement or any other right to profit, Zirvi fails to plead economic damage sufficient for standing. See Feuss, 2021 WL 1153146, at *3.

Zirvi also alleges, without support, that not being named as an inventor on the patents, "has undermined [his] reputation and standing in the scientific community." Compl. ¶ 48. But, a plaintiff, even on a motion to dismiss, cannot rest on "mere allegations of reputational injury alone" to plead a cognizable injury. Feuss, 2021 WL 1153146, at *3.

Finally, Zirvi's Complaint lists 52 patents that he claims utilized his ZipCodes, but does not include any allegations specific to any one patent. Compl. ¶ 45. In Section 256 inventorship cases, there is a presumption that the listed patent investors are correct, and to meet the "heavy burden" to overcome the presumption, a plaintiff must identify a "specific patent claim" for each individual patent. See Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358 (Fed. Cir. 2004) ("The general rule is that a party alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence."); Pro Mktg. Sales, Inc. v. Securion Sys., Inc., No. 19-113, 2020 WL 5912351, at *5 (D. Utah Oct. 6, 2020) (finding that at the motion to dismiss stage, a plaintiff must "identify a single specific patent claim" to which he "made an inventive contribution). Zirvi fails to so allege.

### 2. Count II: Legal Malpractice

Zirvi's malpractice claim is premised on the notion that the Attorney Defendants' "failure to represent, or inform Plaintiff to retain his own representation," caused him to fail "to be compensated or recognized" in the Delaware Litigation settlement and caused him to delay bringing his own case against Illumina. Compl. ¶ 65. But Zirvi's Complaint fails to plead the existence of an attorney-client relationship between himself and any of those Defendants, or to even plead facts sufficient for an assumption by Zirvi that the Attorney Defendants represented his interests. See Iqbal, 556 U.S. at 678 (finding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss). In fact, Zirvi was not even a party to the Delaware Litigation, and served only as a fact witness. Compl. ¶¶ 18–19.

The Court therefore finds that Zirvi failed to state a claim for legal malpractice against the Attorney Defendants.

### 3. Count III: Fraud

For a claim of fraud, the Court must apply the heightened Rule 9(b) pleading standard, meaning that "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the

**CLOSING**

statement's falsity." City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc., 70 F.4th 668, 680 (3d Cir. 2023). Plaintiff has failed to do so here. Instead, the Complaint broadly alleges that "[d]efendants made false statements that Plaintiff's interests and ThermoFisher's interests were aligned and therefore he didn't need an attorney;" and that "even if Plaintiff retained his own counsel," he could not participate in the litigation. Compl. ¶¶ 80–81; see Defs.' Mot. at 27, ECF No. 82. Without context, attribution, or specificity, plaintiff fails to state a claim.

### 4. Count IV: Civil Conspiracy

Zirvi fails to state a civil conspiracy claim because he does not plead any "predicate unlawful purpose" upon which a conspiracy can be based. Golden State Med. Supply Inc. v. AustarPharma LLC, No. 21-17137, 2022 WL 2358423, at *11 (D.N.J. June 30, 2022).

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. The Court will hold the Sanctions Motions **IN ABEYANCE**, pending a conference with Judge Allen, which shall be scheduled forthwith.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**